**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDEE ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, ALEX DeSANTIS, CHERELLE PARKER, VANESSA GARRETT-HARLEY, and JOSEPH GRACE,<br><br>Defendants. | CIVIL ACTION<br><br>No.: 2:26-CV-05266-JHS |

**MOTION TO DISMISS OF DEFENDANTS, CITY OF PHILADELPHIA, ALEX DESANTIS, CHERELLE PARKER, VANESSA GARRETT-HARLEY, AND JOSEPH GRACE**

Defendants, City of Philadelphia, Inspector General Alex DeSantis, Mayor Cherelle Parker, Chief Deputy Mayor Vanessa Garrett-Harley, and Director of Communications Joseph Grace, hereby move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I, II, III, and IV of the Amended Complaint in their entirety, with prejudice. In support thereof, Defendants submit the accompanying Memorandum of Law.

Respectfully submitted,

*/s/ Danielle Banks*

Danielle Banks
Stephanie Fenster
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8120 (fax)

Dated: November 23, 2026

*Attorneys for Defendants, City of Philadelphia, Alex DeSantis, Cherelle Parker, Vanessa Garrett-Harley, and Joseph Grace*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDEE ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, ALEX DeSANTIS, CHERELLE PARKER, VANESSA GARRETT-HARLEY, and JOSEPH GRACE,<br><br>Defendants. | : | CIVIL ACTION<br><br>No.: 2:26-CV-05266-JHS |

**MEMORANDUM OF LAW OF DEFENDANTS,**
**CITY OF PHILADELPHIA, INSPECTOR GENERAL ALEX DESANTIS, MAYOR CHERELLE PARKER, CHIEF DEPUTY MAYOR VANESSA GARRETT-HARLEY, AND DIRECTOR OF COMMUNICATIONS JOSEPH GRACE**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND ....... 3

III. LEGAL STANDARD ....... 4

IV. LEGAL ARGUMENT ....... 5

a. Plaintiff's Title VII Claim Must Be Dismissed as a Matter of Law (Count I) ....... 5

i. Plaintiff's Title VII Claim Should be Dismissed Because She Does Not Connect the Challenged Employment Decisions to Race or Sex Discrimination ....... 6

1. Plaintiff's Amended Complaint Must be Dismissed Because the Conclusory Characterizations Do Not Establish Discriminatory Intent. ....... 6

2. Plaintiff's Purported Comparator Allegations Do Not Support a Plausible Inference of Discrimination. ....... 8

ii. Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because the Amended Complaint Does Not Plausibly Allege Race- or Sex-Based Harassment at All, Much Less Severe or Pervasive Harassment ....... 11

iii. Plaintiff Fails to Plead an Actionable Retaliation Claim Under Title VII and Her Purported Claim Should be Dismissed. ....... 13

1. Plaintiff Fails to Properly Plead a Protected Activity, a Fatal Flaw. ....... 13

2. Plaintiff's Amended Complaint Fails to Allege a Causal Connection Between Her Allegedly Protected Activity and Adverse Employment Action. ....... 14

3. The Post-Termination Allegations Do Not Sufficiently Establish a Separate Title VII Retaliation Theory ....... 16

b. Plaintiff's Claim Under 42 U.S.C. §1981 and §1983 Should be Dismissed (Count II) ....... 17

i. Count II Should be Dismissed against the City Because Plaintiff Fails to Properly Allege Municipal Liability. ....... 17

ii. Plaintiff's §1981 Claim Should Also Be Dismissed Because She Does Not Sufficiently Connect the Challenged Actions to Race Discrimination or Race-Related Protected Activity. ....... 19

iii. Inspector General DeSantis and Chief Deputy Mayor Garrett-Harley Are Also Entitled to Dismissal Because the Complaint Does Not Allege Their Personal Involvement in Plaintiff's Alleged Injury. ....... 21

c. Plaintiff's First Amendment Claim Should be Dismissed Because Plaintiff Fails to State a Claim against Mayor Parker, Inspector General DeSantis, Director Grace, or the City (Count III) ....22

i. Plaintiff Fails to Allege She Engaged in a Protected First Amendment Activity Requiring Dismissal of Her Claim....22

ii. Plaintiff's First Amendment Retaliation Claim Also Must be Dismissed Because It Fails to Allege that Inspector General DeSantis or Director Grace Engaged in First Amendment Retaliation ....25

iii. Count III Also Should be Dismissed Because Plaintiff Fails to Plead Mayor Parker's Personal Involvement in Any Alleged Retaliation ....27

iv. The First Amendment Claim Against the City Should Be Dismissed Because the Amended Complaint Does Not Properly Allege Municipal Liability....28

d. Defendants are Entitled to Dismissal of Plaintiff's Defamation Claim, with Prejudice (Count IV)....30

i. Plaintiff's Claim for Defamation Against Mayor Parker, Inspector General DeSantis, and Director Grace Must Be Dismissed Based upon the Doctrine of Absolute "High Public Official" Immunity....32

ii. The Conditional Privilege Applicable to the Challenged Statements Requires Dismissal of Plaintiff's Defamation Claim....37

iii. Alternatively, The Challenged Statements Cannot Support a Defamation Claim Because They Constitute Non-Actionable Opinion and Are Not Capable of Defamatory Meaning....38

1. Inspector General DeSantis's Statements Are Not Verifiable Assertions of Fact and Therefore Cannot Support a Defamation Claim....38

2. Plaintiff's Defamation Claim Must be Dismissed Because the Challenged Statements Were Substantially True....39

3. Director Grace's Generalized Disagreement with Plaintiff's Account Does Not Support a Claim for Defamation. ....40

4. Mayor Parker's Statement Is Not "Of and Concerning" Plaintiff and Therefore Cannot Give Rise to Defamation Liability....41

e. Plaintiff's Demand for Punitive Damages Should Be Stricken. ....42

f. Dismissal Should Be With Prejudice Because Further Amendment Would Be Futile ....42

V. CONCLUSION AND REQUESTED RELIEF ....44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. PW-Phila. Weekly*,
980 A.2d 215 (Commw. Ct. 2009) ....................38

*Anjelino v. New York Times Co.*,
200 F.3d 73 (3d Cir. 1999)....................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 5

*Balletta v. Spadoni*,
47 A.3d 183 (Pa. Commw. Ct. 2012) ....................31

*Bayer v. Monroe County Children & Youth Services*,
577 F.3d 186 (3d Cir. 2009)....................27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Braig v. Field Communications*,
456 A.2d 1366 (Pa. Super. Ct. 1983)....................38

*Brooks v. Chester Valley Golf Club*,
No. 25-761, 2025 WL 3210349 (E.D. Pa. Nov. 17, 2025) ....................8

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)....................13

*Butto v. CJKant Resource Grp.*,
No. 18-1210, 2019 WL 1147580 (E.D. Pa. Mar. 13, 2019) ....................13

*Carvalho-Grevious v. Delaware State Univ.*,
851 F.3d 249 (3d Cir. 2017)....................16, 19

*Castleberry v. STI Grp.*,
863 F.3d 259 (3d Cir. 2017)....................11, 12

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016).................... *passim*

*Connick v. Myers*,
461 U.S. 138 (1983)....................23

*Curay-Cramer v. Ursuline Academy, Wilmington, De.*,
450 F.3d 130 (3d Cir. 2006)....................14

*De Piero v. Pa. State Univ.*,
711 F. Supp. 3d 410 (E.D. Pa. 2024)....................12

*Factor v. Goode*,
612 A.2d 591 (Pa. Commw. Ct. 1992)....................33

*Feingold v. Southeastern Pennsylvania Transp. Auth.*,
517 A.2d 1270 (Pa. 1986)....................42

*First Lehigh Bank v. Cowen*,
700 A.2d 498 (Pa. Super. 1997)....................31

*Fischer v. Kassab*,
360 A.2d 809 (Pa. Commw. Ct. 1976)....................33

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)....................4

*Garcetti v. Ceballos*,
547 U.S. 410 (2006)....................23, 24

*Golod v. Bank of America Corp.*,
403 F. App'x 699 (3d Cir. 2010)....................6

*Grayson v. Mayview State Hospital*,
293 F.3d 103 (3d Cir. 2002)....................43

*Greene v. Street*,
No. 0303, 2011 WL 10525400 (Pa. Com. Pl. Aug. 4, 2011)....................33

*Hill v. Borough of Kutztown*,
455 F.3d 225 (3d Cir. 2006)....................23

*Hopkins v. Vaughn*,
No. 08-2727, 2010 WL 325886 (3d Cir. Jan. 29, 2010)....................27

*Jones v. City of Phila.*,
893 A.2d 837 (Pa. Commw. Ct. 2006)....................31

*Kentucky v. Graham*,
473 U.S. 159 (1985)....................42

*King v. Borough of New Holland*,
No. 24-6628, 2026 WL 147547 (E.D. Pa. Jan. 20, 2026)....................21, 27

*Lakits v. York*,
258 F. Supp. 2d 405 (E.D. Pa. 2003) ....................42

*Lansberry v. Altoona Area Sch. Dist.*,
356 F. Supp. 3d 486 (W.D. Pa. 2018) ....................17

*Lee v. TMZ Prods. Inc.*,
710 F. App'x 551 (3d Cir. 2017) ....................31

*Lewis v. Philadelphia Newspapers, Inc.*,
833 A.2d 185 (Pa. Super. 2003) ....................31

*Lindner v. Mollan*,
677 A.2d 1194 (Pa. 1996) .................... *passim*

*Lorenz v. CSX Corp.*,
1 F.3d 1406 (3d Cir. 1993) ....................43

*Losch v. Borough of Parkesburg*,
736 F.2d 903 (3d Cir. 1984) ....................29

*Manco v. St. Joseph's University*,
Civ. A. No. 22-285, 2024 WL 299265 (E.D. Pa. Jan. 25, 2024) ....................40

*McCafferty v. Newsweek Media Group, Ltd.*,
955 F.3d 352 (3d Cir. 2020) ....................40, 41

*McGovern v. City of Phila.*,
554 F.3d 114 (3d Cir. 2009) ....................17, 18

*Estate of Oliva ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010) ....................19

*McKibben v. Schmotzer*,
700 A.2d 484 (Pa. Super. Ct. 1997) ....................33, 34

*McLaughlin v. Watson*,
271 F.3d 566 (3d Cir. 2001) ....................26

*McTernan v. City of York*,
564 F.3d 636 (3d Cir. 2009) ....................18, 29, 30

*Miketic v. Baron*,
675 A.2d 324 (Pa. Super. Ct. 1996) ....................37

*Miller v. Clinton Cnty.*,
544 F.3d 542 (3d Cir. 2008) ....................23

*Mirabella v. Villard*,
853 F.3d 641 (3d Cir. 2017)....23, 25

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)....17, 18, 29, 30

*Mulholland v. Gov't Cnty. of Berks*,
706 F.3d 227 (3d Cir. 2013)....29

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024)....25, 26, 27

*Osiris Enterprises v. Borough of Whitehall*,
877 A.2d 560 (Pa. Commw. Ct. 2005)....36

*Pace v. Baker-White*,
432 F. Supp. 3d 495 (E.D. Pa. 2020)....31

*Peebles v. Chain IQ Americas, Inc.*,
No. 25-1419, 2026 WL 281174....19, 20

*Pelagatti v. Cohen*,
536 A.2d 1337 (Pa. Super. Ct. 1987)....39

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)....5

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968)....23

*Rode v. Dellarciprete*,
845 F.2d 1195 (3d Cir. 1988)....21, 27

*Rubin v. CBS Broad. Inc.*,
170 A.3d 560 (Pa. Super. Ct. 2017)....39

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010)....30, 32

*Thomas v. Independence Twp.*,
463 F.3d 285 (3d Cir. 2006)....23

*ToDay's Hous. v. Times Shamrock Commc'ns, Inc.*,
21 A.3d 1209 (Pa. Super. Ct. 2011)....39

*Veno v. Meredith*,
515 A.2d 571 (Pa. Super. Ct. 1986)....38, 39

*Williams v. Borough of West Chester*,
891 F.2d 458 (3d Cir. 1989)....................................................................................29

**Statutes**

42 Pa.C.S. § 8343.........................................................................................................30

42 U.S.C. § 1981................................................................................................1, 2, 17, 42

42 U.S.C. § 1983........................................................................................................ *passim*

Political Subdivision Tort Claims Act Section 8550.....................................................37

**Other Authorities**

Restatement (Second) of Torts § 566.............................................................................38

Federal Rule of Civil Procedure 12(b)(6).................................................................4, 5

Defendants, City of Philadelphia (the "City"), Inspector General Alex DeSantis ("Inspector General DeSantis"), Mayor Cherelle Parker ("Mayor Parker"), Chief Deputy Mayor Vanessa Garrett-Harley (" Chief Deputy Mayor Garrett-Harley"), and Director of Communications Joseph Grace ("Director Grace") (collectively, the "Defendants"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.

## I. INTRODUCTION

Plaintiff's Amended Complaint confirms, rather than cures, the deficiencies identified in Defendants' original Motion to Dismiss. At its core, this case concerns a workplace dispute arising from Plaintiff's disagreement with the City's handling of personnel matters, workplace complaints, and the subsequent termination of her employment following a thorough investigation into her misconduct. Dissatisfied with the City's explanation for that decision, Plaintiff embarked on a public campaign criticizing City officials and questioning the Parker Administration's commitment to diversity, equity, and inclusion. The Amended Complaint attempts to transform those disputes into four causes of action: (1) race and sex discrimination and retaliation under Title VII; (2) race discrimination, harassment, and retaliation under 42 U.S.C. §§ 1981 and 1983; (3) First Amendment retaliation under 42 U.S.C. § 1983; and (4) defamation. Although Plaintiff expanded her factual allegations and revised several theories of liability, she still relies heavily on conclusory assertions and her own characterization of events, rather than plausible facts.

First, Plaintiff's Title VII race and sex discrimination and retaliation claims still fail because Plaintiff pleads no non-conclusory facts linking the actions of any Defendant to discriminatory animus based on race or sex, other than her self-serving conclusions that the challenged employment decisions were attributed to race or sex bias. Nor does she plausibly allege that similarly situated supervisory employees of a different race or sex were treated more favorably

under comparable circumstances. She also fails to demonstrate a causal connection between any protected activity and materially adverse action to support her retaliation claim.

Second, for substantially similar reasons, Plaintiff fails to state a claim for race discrimination under §§ 1981 and 1983 because she alleges no facts plausibly supporting an inference that any Defendant acted because of her race. Instead, she relies largely on conclusory assertions and comparisons to purportedly similarly situated employees who, based on her own allegations, were not similarly situated. Plaintiff's principal disciplinary comparator, Chris Dailey, allegedly engaged in different conduct arising from the photograph incident. Although the Amended Complaint now alleges that Dailey held supervisory responsibilities, that allegation does not itself establish that his responsibilities for handling the report, the conduct evaluated, or the applicable disciplinary circumstances were comparable to Plaintiff's behavior. Plaintiff's allegations amount to little more than a recitation of the elements of a discrimination claim unsupported by factual content, precisely the type of pleading deemed insufficient by *Twombly* and *Iqbal*.

Plaintiff's First Amendment retaliation claim fares no better. Plaintiff largely repackages the same allegations underlying her discrimination claims and labels them retaliation in violation of the First Amendment. But those allegations do not involve an issue of public concern; they involve Plaintiff's comments about her employment and termination, and those comments are not entitled to protection under the First Amendment. Even if Plaintiff's comments could be construed as coming within the ambit of speech protected by the First Amendment (which they do not), her claim still fails as a matter of law.

Finally, despite revising her defamation allegations and dismissing the claim against the City, Plaintiff still cannot overcome the immunity protections available to the Individual

Defendants or transform nonactionable opinions and protected public statements into actionable defamation. The Amended Complaint adds factual allegations concerning supervisory responsibilities, discrimination reports, and communications with a private broadcaster, but these additions do not cure the claim's deficiencies. As such, Plaintiff's defamation claim must be dismissed.

In sum, although substantially longer than the original complaint, the Amended Complaint does not remedy the deficiencies Defendants previously identified. Because Plaintiff amended after receiving detailed notice of those defects and still failed to cure them, the Amended Complaint should be dismissed with prejudice; further amendment would be futile.

## II. RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND

Plaintiff alleges that she began serving as the City's Chief Diversity, Equity & Inclusion ("DEI") Officer in October 2024 and that the City terminated her employment on July 22, 2025. (Am. Compl. ¶¶ 34, 87). According to the Amended Complaint, Plaintiff participated in senior leadership meetings, supervised employees within the Office of Diversity, Equity & Inclusion, and was responsible for advancing the Administration's DEI initiatives. (*Id.*, ¶ 39). Plaintiff also alleges that, throughout her tenure, she disagreed with City officials regarding various workplace, personnel, and policy matters and raised concerns related to issues affecting City employees. (*Id.*, ¶¶ 46-49, 50-55, 71-74).

The Amended Complaint alleges that, on July 10, 2025, Plaintiff reported to Human Resources that a City employee had circulated a sexual image involving another City employee. (*Id.*, ¶¶ 75-78). According to the Amended Complaint, the matter was later referred to the Inspector General's Office, and Plaintiff participated in an investigation conducted by Inspector General DeSantis. (*Id.*, ¶¶ 80-83). Plaintiff alleges that she received confirmation on July 16, 2025, that she

had reported the matter and participated in the investigation in good faith. (*Id.*, ¶ 82). She denied possessing or distributing the image. (*Id.*, ¶ 92).

Following the investigation, Plaintiff's employment was terminated on July 22, 2025 based on a review of her conduct, judgment lapses, and confirmed violations of the City's Sexual Harassment Policy. (*Id.*, ¶¶ 87-88). Despite this, Plaintiff contends she was terminated because of her race and sex while the employee who transmitted the image remained employed. (*Id.*, ¶¶ 94-97). Following her termination, Plaintiff publicly criticized City officials and the Administration's commitment to diversity, equity, and inclusion through media interviews and public statements. (*Id.*, ¶¶ 131-36). Plaintiff alleges that City officials, in turn, defamed her in publicly addressing the circumstances surrounding her termination, retaliated against her by allegedly attempting to interfere with a planned media interview concerning her separation from City employment, and discriminated and retaliated against her on the basis of race and sex in connection with the termination decision. (*Id.*, ¶¶ 124-27, 131-36, 170-72). Plaintiff's added allegations concerning comparator employees, complaints of discrimination, communications with a private broadcaster, and official immunity do not cure the deficiencies identified below, and the Amended Complaint should be dismissed in its entirety.

## III. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "'show' such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (modification in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiff's own allegations foreclose any plausible basis for relief on the claims challenged by the Motion. Accordingly, Plaintiff's Amended Complaint should be dismissed.

## IV. LEGAL ARGUMENT

### a. Plaintiff's Title VII Claim Must Be Dismissed as a Matter of Law (Count I)

Plaintiff fails to state a valid Title VII claim in Count I because she fails to connect the challenged employment decisions to her alleged discrimination. Her Title VII hostile work environment theory fails because the alleged conduct, even if considered together, is not severe or pervasive enough to alter the terms and conditions of her employment, and she does not plausibly tie it to her race or sex. She also does not properly allege retaliation because she cannot causally connect any adverse action that is temporally close to a purported protected activity. As such, Plaintiff's Title VII claim should be dismissed.

### i. Plaintiff's Title VII Claim Should be Dismissed Because She Does Not Connect the Challenged Employment Decisions to Race or Sex Discrimination.

1. Plaintiff's Amended Complaint Must be Dismissed Because the Conclusory Characterizations Do Not Establish Discriminatory Intent.

Plaintiff's characterization of the challenged employment decisions as discriminatory does not substitute for factual allegations plausibly connecting those decisions to her race or sex. Although Plaintiff need not establish a complete prima facie case at the pleading stage, she must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that her protected status motivated the challenged action. Legal conclusions and formulaic assertions of discrimination are not entitled to a presumption of truth. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016). Significantly, despite substantially expanding the Amended Complaint, Plaintiff still does not identify a single race-based or sex-based remark by any decisionmaker involved in the challenged employment actions. While direct evidence is not required, the absence of any allegation that the relevant decisionmakers expressed discriminatory animus further underscores the speculative nature of Plaintiff's theory that race or sex motivated the challenged actions. *Golod v. Bank of America Corp.,* 403 F. App'x 699, 702-03 (3d Cir. 2010) (affirming dismissal where allegations of discrimination were based largely on speculation and conclusory assertions rather than facts supporting an inference of discriminatory motive).

The Amended Complaint's allegations concerning restrictions on Plaintiff's authority, purportedly canceled meetings, resistance to her initiatives, and demands that she follow the Administration's priorities do not sufficiently connect those actions to her race or sex. Plaintiff merely alleges that Mayor Parker criticized her "DEI ideology," that leadership instructed DEI personnel to "stand down," and that employees were expected to support the Mayor's agenda.

(Am. Compl., ¶¶ 46-48, 67-68). Moreover, Plaintiff now expressly alleges that Mayor Parker limited DEI initiatives because of broader Administration policy choices, concerns about public messaging, and changing federal scrutiny of DEI programs. (Am. Compl. ¶¶ 67-70). Plaintiff's own allegations supply an obvious non-discriminatory explanation for the conduct she challenges because those allegations reinforce, rather than undermine, Defendants' position. The alleged directives applied to DEI programming itself, not to Plaintiff or her race or sex. Indeed, opposition to a DEI policy, standing alone, does not plausibly establish that any subsequent employment decision was motivated by Plaintiff's race or sex.

The allegations concerning policy alignment, reporting responsibilities, and management disputes do not themselves identify a race- or sex-based reason for the challenged decisions, either. Their significance must instead be assessed together with the alleged differential treatment and the remaining circumstances, rather than treating opposition to Plaintiff's reporting activities as necessarily equivalent to discrimination because of her protected status. The Amended Complaint relies principally on allegations that Plaintiff and Tyrell Brown are both Black and that another employee involved in the photograph incident is White.[1] (Am. Compl. ¶¶ 94-97). However, research has revealed no Third Circuit or Pennsylvania case law that stands for the proposition that a disagreement over DEI policy, without more, is somehow sufficient to establish that a particular employment decision was motivated by an employee's race or sex.

Further, the allegations expressly implicating race or sex likewise do not sufficiently establish the required connection to the challenged employment decisions. Plaintiff identifies a "'blackface' caricature," directives and comments concerning Executive Director of LGBTQ+ Affairs, Celena Morrison, and Chief Deputy Mayor Garrett-Harley's response to Plaintiff's

[1] Mayor Parker and Deputy Chief Mayor Garrett-Harley are also Black women.

disclosure of a prior sexual assault. (Am. Compl., ¶¶ 56-66). The Amended Complaint does not sufficiently connect these allegations to a decision to restrict Plaintiff's duties or the decision to terminate her. The caricature allegation identifies an incident to which Plaintiff objected, rather than explaining how the incident evidences race- or sex-based motivation in the challenged employment decisions. Similarly, the allegations related to Morrison have no bearing on Plaintiff's employment and, accordingly, do not establish that Plaintiff's race or sex motivated any allegedly adverse employment decision. Considered together, these incidents do not supply the necessary factual connection between Plaintiff's protected status and the challenged decisions.

Plaintiff also relies on her qualifications, alleged satisfactory performance, absence of prior discipline, asserted inconsistencies in the City's explanations, and the more favorable treatment allegedly afforded Dailey. (*See, e.g.*, Am. Compl., ¶¶ 40, 95). Even accepting the factual allegations as true and considering them together, these circumstances do not sufficiently connect the challenged decisions to Plaintiff's race or sex, and her Title VII claim must be dismissed because she does not plead facts to establish discriminatory intent.

2. Plaintiff's Purported Comparator Allegations Do Not Support a Plausible Inference of Discrimination.

Plaintiff's comparator allegations do not plausibly support an inference that the City discriminated against her because of race or sex. As noted above, a plaintiff must plead facts raising a reasonable expectation that discovery will reveal evidence of discrimination. *Connelly*, 809 F.3d at 789. When a plaintiff relies on differential treatment of other employees, the allegations must permit a meaningful comparison of the relevant employment circumstances. Relevant considerations include whether the employees were subject to comparable standards and engaged in similar conduct without differentiating circumstances that would distinguish their conduct or the employer's treatment of them. *See Brooks v. Chester Valley Golf Club*, No. 25-761, 2025 WL

3210349, at *4 (E.D. Pa. Nov. 17, 2025) (*citing Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009)).

While the Amended Complaint supplies additional detail concerning Dailey's supervisory responsibilities, Director Grace's personnel authority, and Garcia's centralized DEI role, these pleaded comparisons, considered with the allegations as a whole, do not plausibly support an inference that race or sex motivated the particular employment actions challenged. More specifically, Plaintiff identifies Dailey, a white male who allegedly sent the photograph, as receiving more favorable treatment because he remained employed while Plaintiff and Brown were terminated. (Am. Compl., ¶¶ 94-95). The Amended Complaint further alleges that Dailey held supervisory responsibilities, previously supervised Plaintiff, and was senior to her. (*Id.*, ¶ 76). The remaining distinction concerns the conduct and responsibilities being compared: Dailey allegedly transmitted the image, while the stated grounds for Plaintiff's discipline concerned her response to the disclosure, handling of the incident, and compliance with reporting and confidentiality expectations. (Am. Compl., ¶¶ 75, 88).

Notably, involvement in the same incident and possession of supervisory authority do not themselves make Dailey a proper comparator. The Amended Complaint does not describe whether Dailey was evaluated under the same reporting obligations or whether the officials imposing discipline applied comparable standards to the different conduct attributed to each employee. In other words, while both Dailey and Plaintiff were involved in the same photograph incident and experienced different disciplinary outcomes, these factual allegations do not sufficiently establish that race or sex explains the distinction in treatment. Stated simply, Plaintiff again fails to plausibly allege that she and Dailey were similarly situated in all material respects, because she cannot.

The Amended Complaint's additional references to Director Grace do not resolve the comparator problem either. Plaintiff alleges that Director Grace, a white male, terminated a member of his communications staff while Plaintiff allegedly lacked authority to hire, discipline, or terminate certain subordinates. (Am. Compl. ¶¶ 41-42, 44). But those allegations identify only a purported difference in delegated managerial authority. Plaintiff pleads no facts regarding whether the Office of Communications and the Office of DEI operated under comparable personnel-approval requirements, reporting structures, budgetary authority, or disciplinary protocols. The relevant comparison is between Director Grace's authority and Plaintiff's; the race of the employee Director Grace terminated does not itself support an inference that Plaintiff's authority was restricted because of her race or sex.

Plaintiff separately alleges that DEI messaging and authority were centralized under Garcia, a white woman, after the issuance of federal anti-DEI executive orders. (Am. Compl., ¶70). That allegation identifies Garcia's different position as City Solicitor and a legal and policy context for the reassignment but does not describe the extent to which she assumed Plaintiff's operational duties or exercised comparable responsibilities. Accepting the added facts as true, the Court must determine whether those facts, considered with the remaining allegations, plausibly connect the challenged allocation of authority to race or sex rather than merely identify officials of different races or sexes who exercised different governmental functions. See *Connelly*, 809 F.3d at 789.

Plaintiff's allegations concerning shifting explanations also miss the mark. She alleges that the City initially tied her termination to the photograph incident, later criticized the timing of her report despite the absence of a policy deadline, and cited her involvement in HR matters after instructions to stand down. (Am. Compl., ¶¶ 63-64, 84). The termination letter, as quoted in the Amended Complaint, identified conduct, judgment lapses, policy violations, and disregard of

guidance. (*Id.*, ¶ 88). However, references to different aspects of the same incident do not constitute inconsistent explanations. Nor does Plaintiff's alleged lack of possession or distribution of the image logically resolve every criticism concerning her response to the disclosure. (*Id.*, ¶ 92). That argument does not require accepting the criticisms as accurate; it concerns whether the explanations alleged are contradictory. They are not.

Despite the filing of the Amended Complaint, Plaintiff still fails to sufficiently connect those circumstances to race- or sex-based decision-making, given the different conduct being compared and the absence of allegations establishing comparable reporting responsibilities. Indeed, the Amended Complaint further undermines Plaintiff's comparator theory by alleging that Plaintiff's position was "unique" in that it required her to work with Human Resources. (Am. Compl., ¶ 54). Plaintiff's own allegations recognize that City leadership expected her position to carry distinct reporting and compliance responsibilities. (*Id.*, ¶ 45). Those allegations make clear that Plaintiff's role was materially different from the employees she identifies as comparators and further weakens any inference that the alleged differences in treatment were attributable to race or sex. Accordingly, Plaintiff's comparator theory does not cure the deficiencies in her Title VII disparate-treatment claims.

**ii. Plaintiff's Hostile Work Environment Claim Should Be Dismissed Because the Amended Complaint Does Not Plausibly Allege Race- or Sex-Based Harassment at All, Much Less Severe or Pervasive Harassment**

To state a hostile-work-environment claim, Plaintiff must plausibly allege that she suffered intentional discrimination because of race or sex; that the discrimination was severe or pervasive; that it detrimentally affected her and would detrimentally affect a reasonable person in like circumstances; and that a basis exists for imputing liability to the employer. *See Castleberry v. STI Grp.*, 863 F.3d 259, 263–65 (3d Cir. 2017). The inquiry considers the totality of the circumstances,

including the conduct's frequency and severity, whether it was physically threatening or humiliating rather than a mere offensive utterance, and whether it unreasonably interfered with work performance. *Id.* at 264. Severity and pervasiveness are alternative grounds: an exceptionally severe isolated incident may suffice, while less severe conduct may become actionable through repetition. *Id. See also De Piero v. Pa. State Univ.*, 711 F. Supp. 3d 410, 422 (E.D. Pa. 2024) (citing *Castleberry*, 863 F.3d at 264). Plaintiff's allegations do not sufficiently plead either a discriminatory nexus for the broader course of workplace conflict or discriminatory harassment meeting that standard.

The Amended Complaint again identifies a blackface caricature published in a City newsletter, a directive to "document" Morrison "out," comments concerning Morrison's voice, and Chief Deputy Mayor Garrett-Harley's response to Plaintiff's disclosure of a prior sexual assault. (*Id.*, ¶¶ 46-62). However, the Amended Complaint still does not sufficiently explain how those incidents establish that the alleged broader restrictions on Plaintiff's authority, professional isolation, and policy disputes were imposed because of Plaintiff's race or sex. Plaintiff's opposition to perceived discrimination does not, without more, establish that the alleged hostility was motivated by her own protected status. Accordingly, the Amended Complaint does not plausibly convert the entire course of workplace conflict into race- or sex-based harassment.

Taking the allegations identified above as true, the Amended Complaint does not plausibly allege conduct that was sufficiently "severe or pervasive" to alter the conditions of Plaintiff's employment. The allegations consist primarily of isolated incidents and disagreements concerning management and policy; many concern third parties rather than Plaintiff herself, and none establish that Plaintiff was subjected to ongoing harassment because of her race or sex.

Title VII requires more. Courts in this Circuit routinely reject hostile-work-environment claims where the alleged conduct, even if unpleasant or unfair, is not plausibly connected to a protected characteristic. *See Butto v. CJKant Resource Grp.*, No. 18-1210, 2019 WL 1147580, at *3 (E.D. Pa. Mar. 13, 2019) (dismissing hostile work environment claim on the grounds that even though plaintiff had to work in an environment he deemed "uncomfortable," defendant's behavior did not rise to the level of a hostile work environment). Indeed, Plaintiff's allegations regarding Mayor Parker's criticism of Plaintiff's "DEI ideology," directives that DEI personnel "stand down," and expectations that employees support the Administration's priorities are disputes over policy and management. (Am. Compl. ¶¶ 46-49, 67-70). There is no severe or pervasive conduct pleaded, and the claim should be dismissed.

**iii. Plaintiff Fails to Plead an Actionable Retaliation Claim Under Title VII and Her Purported Claim Should be Dismissed.**

To state a Title VII retaliation claim, Plaintiff must allege facts plausibly supporting that she engaged in protected activity, suffered a materially adverse action, and experienced that action because of her protected activity. *See Connelly*, 809 F.3d at 789. Material adversity requires conduct that, viewed objectively and in context, could dissuade a reasonable worker from making or supporting a discrimination complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64–70 (2006). At the pleading stage, Plaintiff must allege facts supporting each required element rather than rely on the characterization of all allegedly unfavorable treatment as retaliation.

1. Plaintiff Fails to Properly Plead a Protected Activity, a Fatal Flaw.

Title VII does not protect every workplace complaint or report of misconduct. The protected activity must relate to employment discrimination charges implicating "discrimination on the basis of race, color, religion, sex, or national origin." See *Connelly*, 809 F.3d at 792, n.10 (distinguishing sexual-harassment complaints from complaints implicating only safety issues);

*Curay-Cramer v. Ursuline Academy, Wilmington, De.,* 450 F.3d 130, 137 (3d Cir. 2006) (affirming dismissal of complaint where the alleged advocacy lacked a perceptible connection to an unlawful employment practice, explaining that the objective message conveyed, not the employee's subjective intent, determines whether the communication constitutes protected opposition). Thus, disagreements concerning the administration's DEI strategy, public messaging, or allocation of managerial authority are not protected simply because they arose within a DEI office.

Likewise, Plaintiff's report concerning children allegedly endangered in the City's care does not identify a Title VII violation. (Am. Compl., ¶ 71). Similarly, her disclosure of a prior sexual assault and request to attend a criminal proceeding do not, without additional allegations, identify opposition to an employment practice prohibited by Title VII or participation in a Title VII proceeding. (*Id.*, ¶¶ 63–66). These matters cannot independently sustain the retaliation claim merely because Plaintiff alleges in conclusory fashion that unfavorable treatment followed them. The issue is whether the facts as pleaded sufficiently connect qualifying opposition to a materially adverse response. Here, they do not. General policy objections without more cannot form the basis for a Title VII retaliation claim, and that purported claim should be dismissed.

2. Plaintiff's Amended Complaint Fails to Allege a Causal Connection Between Her Allegedly Protected Activity and Adverse Employment Action.

Plaintiff's earlier complaints do not, merely by preceding the challenged actions, establish a plausible connection. The passage of time is assessed in context, considering timing, alleged antagonism, inconsistent explanations, and the remaining circumstances together. *See Connelly*, 809 F.3d at 792-93. Her 2022 sexual-harassment report substantially preceded the challenged 2025 employment actions, and she acknowledges that the administration knew about that report when it hired her in October 2024. (Am. Compl., ¶¶ 32-37). Similarly, Plaintiff's February 2025 objection

to the blackface caricature published in the City newsletter preceded her July termination by several months. (*Id.*, ¶¶ 61-62, 87). The Amended Complaint does not identify statements linking that objection to her termination or otherwise sufficiently connect the intervening workplace disputes to that particular incident. More broadly, Plaintiff pleads a series of events over time, but nothing explains how these attenuated events support her claim that her termination was retaliatory. Indeed, the Amended Complaint alleges a continuous stream of purportedly protected conduct throughout Plaintiff's employment. Plaintiff claims she repeatedly raised concerns regarding DEI initiatives, discrimination complaints, employee misconduct, retaliation, harassment, workplace investigations, and personnel matters. (Am. Compl., ¶¶ 46-55, 71-74). Because the alleged protected conduct supposedly occurred throughout her tenure, temporal proximity loses any alleged evidentiary force.

Accepting Plaintiff's theory would effectively convert every subsequent employment decision into actionable retaliation simply because Plaintiff had previously engaged in workplace advocacy. Moreover, Plaintiff's own allegations identify an intervening event that further undermines any inference of retaliatory causation. According to the Amended Complaint, the Office of Inspector General opened an investigation into the July 2025 incident, conducted witness interviews, and was actively gathering facts in the days immediately preceding Plaintiff's termination. (Am. Compl., ¶¶ 80-83). Plaintiff further alleges that City leadership was aware of and acted in response to that investigation before her termination. (*Id.*, ¶ 83). Plaintiff thus alleges not simply that she engaged in protected activity and was later terminated, but that decisionmakers acted after receiving and considering information generated through an intervening investigative process. Yet the Amended Complaint pleads no facts plausibly showing that the investigation and resulting findings were merely a pretext for retaliation. Nor does it plausibly explain why the Court

should infer that Plaintiff's protected activity, rather than the matters addressed during the investigation and the City's stated concerns regarding the photograph incident and Plaintiff's conduct, was the but-for cause of the challenged employment action. *See Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259-60 (3d Cir. 2017). The Amended Complaint therefore fails to plead facts supporting a plausible causal connection between Plaintiff's alleged protected activity and her termination.

Finally, the Amended Complaint alleges that senior City officials were aware of Plaintiff's prior 2022 complaint before hiring her into the Chief DEI Officer position in October 2024. (Am. Compl., ¶ 35). Because Plaintiff alleges that the same decisionmakers hired her despite knowing of that prior protected activity, those allegations substantially undermine any inference that the same decisionmakers later acted out of retaliatory animus arising from the same complaint. While not dispositive, the same-actor inference further weakens the plausibility of Plaintiff's retaliation theory.

3. The Post-Termination Allegations Do Not Sufficiently Establish a Separate Title VII Retaliation Theory.

To the extent Count I incorporates Plaintiff's post-termination allegations, the Amended Complaint must plausibly connect a materially adverse response to Title VII-protected activity. Plaintiff alleges public statements concerning both administration policy and discrimination-related matters, followed by public criticism and communications with iHeartMedia concerning a scheduled interview. (Am. Compl. ¶¶ 110–132). These events – a public controversy commenced by Plaintiff – simply cannot be recast as retaliatory. Indeed, Director Grace's public disagreement with Plaintiff's post-termination statements and Inspector General DeSantis's criticism of her handling of the photograph incident do not establish materially adverse retaliation. *Id.* Instead, they were a response to Plaintiff's own media campaign against the City and its officials.

**b. Plaintiff's Claim Under 42 U.S.C. §1981 and §1983 Should be Dismissed (Count II)**

Count II similarly fails as a matter of law and should be dismissed. At the outset, the claim should be dismissed against the City because Plaintiff does not plausibly allege municipal liability. Moreover, Plaintiff does not allege any facts to support a showing that she engaged in protected race-based activity. Finally, Plaintiff does not allege the personal involvement of Inspector General DeSantis or Chief Deputy Mayor Garrett-Harley in the alleged deprivation of her rights, which is required for liability under §1983. As such, Count II of the Amended Complaint should be dismissed.

**i. Count II Should be Dismissed against the City Because Plaintiff Fails to Properly Allege Municipal Liability.**

Plaintiff brings Count II through § 1983 to vindicate rights secured by § 1981. (Am. Compl. ¶¶ 142–152). That enforcement mechanism requires Plaintiff to plead a basis for municipal liability; the City cannot be held liable merely because it employed the individuals who allegedly discriminated or retaliated against her. *See McGovern v. City of Phila.*, 554 F.3d 114, 120–22 (3d Cir. 2009). Plaintiff must plausibly connect the alleged deprivation of her § 1981 rights to an official municipal policy, custom, or qualifying final-policymaker decision. *Id*. at 121–22.

As a threshold matter, Count II fails because Plaintiff has not plausibly alleged an underlying violation of § 1981. Defendants incorporate the preceding arguments in Section IV(a). The Amended Complaint does not plausibly allege intentional race discrimination, race-based retaliation, or injury caused by race-related protected activity. Without an underlying violation of § 1981, municipal liability cannot attach under § 1983, and characterizing an employment decision as municipal policy does not cure that failure. *See Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 497 (W.D. Pa. 2018) (dismissing *Monell* claim because Plaintiff failed to allege an

underlying constitutional violation, which is "implicit" in the *Monell* framework). Accordingly, Count II necessarily fails against the City as well.

Independently, Plaintiff's generalized agency allegations do not establish municipal liability. The Amended Complaint alleges that City employees acted within the scope of their authority and employment and that the City acted through its agents. (Am. Compl. ¶¶ 17–19). Those allegations describe an employment relationship, not the required policy or custom. *See McGovern*, 554 F.3d at 121–22. Nor does the Amended Complaint identify a formal policy directing race discrimination or retaliation for opposing race discrimination. Even if Plaintiff relies on an unwritten custom, she does not sufficiently allege a settled municipal custom or practice of any kind. To the contrary, her allegations relate only to her employment disputes and challenged decisions relating to the termination of her employment.

Plaintiff's newly added final-policymaker allegations do not cure this defect. Although the Amended Complaint repeatedly labels Mayor Parker a "final policymaker" and characterizes the challenged conduct as official policy, those allegations merely recite *Monell* terminology. (Am. Compl., ¶¶ 23, 25, 160). Plaintiff still identifies no formal policy requiring discrimination, no widespread custom affecting other employees, no pattern of similar incidents, and no facts demonstrating that the challenged actions reflected a municipal practice rather than an isolated employment dispute. *See McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009). Critically, the Amended Complaint identifies only actions allegedly directed toward Plaintiff herself and alleges no repeated incidents, similarly situated employees, or comparable municipal conduct. Plaintiff thus seeks to transform a single employment dispute into municipal liability, and *Monell* does not permit that result. The allegations, considered together, do not connect the asserted

deprivation of § 1981 rights to a qualifying municipal policy, practice, or custom. Accordingly, Count II should be dismissed as against the City.

**ii. Plaintiff's §1981 Claim Should Also Be Dismissed Because She Does Not Sufficiently Connect the Challenged Actions to Race Discrimination or Race-Related Protected Activity.**

Section 1981 prohibits discrimination and retaliation based on race in the making and enforcement of contracts. *Anjelino v. New York Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999); *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010). Its protections do not extend to sex discrimination or retaliation for complaints concerning sexual harassment, sexual misconduct, or other sex-based workplace issues unrelated to race. *See Carvalho-Grevious*, 851 F.3d at 256 (holding that retaliation claims based on complaints of gender discrimination are not cognizable under § 1981). Accordingly, to state a retaliation claim under § 1981, a plaintiff must plausibly allege that she engaged in protected activity, her employer took an adverse employment action against her, and there was a causal connection between her participation in the protected activity and the adverse action. *See Estate of Oliva*, 604 F.3d at 798; *Peebles v. Chain IQ Americas, Inc.*, No. 25-1419, 2026 WL 281174, at *1-2 (affirming dismissal of § 1981 claim because plaintiff failed to present factual allegations linking termination decision to her race). The Amended Complaint now identifies Plaintiff's escalation of Deborah Ming's race-discrimination complaint. (Am. Compl., ¶ 74). However, she does not allege facts to plausibly connect that activity to the adverse actions attributed to each Defendant.

Defendants incorporate the race-discrimination analysis in Section IV(a), subject to the distinct causation requirement governing § 1981. At bottom, the Amended Complaint suffers from the same fundamental deficiency as the original pleading. Although Plaintiff repeatedly invokes race discrimination, she does not allege any conduct to support her claims. Plaintiff largely asks

the Court to infer race discrimination, which is not a substitute for factual allegations plausibly connecting the challenged conduct to her race.

Under § 1981, a plaintiff must sufficiently allege facts to support an inference "that race was a but-for cause of [her] injury." *Peebles*, 2026 WL 281174, at *2 (*citing Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020)). The added allegations concerning Grace's managerial authority and Garcia's legal oversight do not eliminate the deficiencies discussed in Section IV(a). Those allegations concern officials occupying different governmental roles and do not supply the missing connection between race and the particular restrictions or discipline challenged here. Accordingly, to the extent Count II relies on the same asserted disparate treatment, the incorporated analysis must be evaluated under *Comcast*'s but-for standard set forth in *Peebles* rather than a contention that race merely played some unspecified role.

Plaintiff's retaliation theory requires a separate assessment of the particular protected activity. As noted above, the Amended Complaint now alleges that Plaintiff escalated Deborah Ming's report of race and sex discrimination and that Inspector General DeSantis and Chief Deputy Mayor Garrett-Harley knew of that escalation. (Am. Compl., ¶ 74). However, Plaintiff's sex-related reports and general policy disputes cannot, standing alone, supply that race-related connection. For the reasons discussed above and in the personal-involvement analysis in Section IV(b)(iii) below, the allegations remain insufficient to attribute the challenged actions to retaliation prohibited by § 1981.

**iii. Inspector General DeSantis and Chief Deputy Mayor Garrett-Harley Are Also Entitled to Dismissal Because the Complaint Does Not Allege Their Personal Involvement in Plaintiff's Alleged Injury.**

To the extent Count II is asserted against Defendants Inspector General DeSantis or Chief Deputy Mayor Garrett-Harley in their individual capacities, the claim also fails because the Amended Complaint does not allege their personal involvement in any purportedly discriminatory employment decision. Liability under §1983 cannot be premised upon respondeat superior or generalized supervisory authority. *King v. Borough of New Holland*, No. 24-6628, 2026 WL 147547, at * 10 (E.D. Pa. Jan. 20, 2026). Rather, a plaintiff must allege facts showing that each defendant personally participated in, directed, or knowingly acquiesced in the alleged constitutional violation. *Id.* at *12; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

The Amended Complaint attributes specific conduct to both Inspector General DeSantis and Chief Deputy Mayor Garrett-Harley, but participation in the events surrounding an employment decision is not participation in unlawful race discrimination or race-based retaliation. Plaintiff alleges that Inspector General DeSantis investigated the photograph incident and recommended termination, while Chief Deputy Mayor Garrett-Harley restricted Plaintiff's activities and participated in the termination-related events. (Am. Compl. ¶¶ 66, 68-71, 81-84, 87). The Amended Complaint does not sufficiently connect those actions to intentional race discrimination or retaliation for race-related opposition. Neither an investigative recommendation nor supervisory involvement establishes liability solely because it contributed to an adverse employment outcome; the required unlawful connection must also be plausibly alleged.

The Amended Complaint's newly added allegations concerning Inspector General DeSantis likewise fail to establish personal involvement in any alleged discrimination. For example, Plaintiff added factual details that Inspector General DeSantis received reports,

conducted interviews, participated in the investigation, communicated investigative findings, and recommended termination. (Am. Compl., ¶¶ 80-83). Those allegations describe investigative conduct. They do not establish that Inspector General DeSantis acted because of Plaintiff's race, retaliated against race-related protected activity, or personally engaged in intentional discrimination. Therefore, while Plaintiff's amended pleading elaborates on her factual narrative, it fails to cure the pleading defect that none of the allegations set forth in the Amended Complaint demonstrate that either Chief Deputy Mayor Garrett-Harley or Inspector General DeSantis personally participated in, directed, or knowingly acquiesced in the specific violations alleged, as required to state a claim under § 1981. Count II must be dismissed.

**c. Plaintiff's First Amendment Claim Should be Dismissed Because Plaintiff Fails to State a Claim against Mayor Parker, Inspector General DeSantis, Director Grace, or the City (Count III)**

Plaintiff's First Amendment retaliation claim pursuant to § 1983 in Count III fails to state a claim against Inspector General DeSantis, Director Grace, Mayor Parker, or the City. First, the Amended Complaint fails to allege facts establishing that Inspector General DeSantis or Director Grace retaliated against Plaintiff for constitutionally protected activity. Second, the Amended Complaint fails to allege any personal involvement by Mayor Parker in the alleged retaliation. Finally, the Amended Complaint fails to allege the basis for imposing municipal liability on the City. Accordingly, Count III should be dismissed.

**i. Plaintiff Fails to Allege She Engaged in a Protected First Amendment Activity Requiring Dismissal of Her Claim**

To state a First Amendment retaliation claim, a public employee must plausibly allege that: (1) she engaged in activity protected by the First Amendment; (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising First Amendment rights; and (3) the protected activity was a substantial or motivating factor in the challenged action.

*Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir. 2006); *Mirabella v. Villard,* 853 F.3d 641, 649-50 (3d Cir. 2017); *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Whether speech is protected under the First Amendment is a question of law for the Court. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). A public employee's speech is protected only if the employee spoke as a citizen, rather than pursuant to her official duties, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), and the speech addressed a matter of public concern, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Speech involves a matter of public concern only when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. By contrast, speech concerning workplace disputes, personnel matters, or an employee's own treatment by supervisors constitutes an unprotected personal grievance. *Id.* at 154. In determining whether speech addresses a matter of public concern, courts examine its "content, form, and context." *Connick*, 461 U.S. at 147-48.

The Third Circuit has repeatedly held that complaints regarding an employee's own working conditions, job responsibilities, treatment by supervisors, disciplinary issues, or workplace disputes do not constitute matters of public concern protected by the First Amendment. *Miller v. Clinton Cnty.*, 544 F.3d 542, 548-51 (3d Cir. 2008). Speech does not become protected merely because it relates to a governmental workplace; rather, the relevant inquiry is whether the speaker sought to expose official wrongdoing or advance a matter of concern to the public, as opposed to pursuing a private employment dispute. *Connick*, 461 U.S. at 148.

Here, the allegations identified in the Amended Complaint concern Plaintiff's performance of her employment duties and her disagreements with City leadership regarding internal personnel and workplace issues. Plaintiff alleges that she objected to directives from Chief Deputy Mayor Garrett-Harley concerning DEI initiatives, challenged the City's response to a newsletter image

she considered discriminatory, reported concerns regarding the treatment of Executive Director Celena Morrison, elevated reports regarding workplace misconduct, and reported allegations of sexual harassment involving fellow City employees. (Am. Compl. ¶¶ 46-64, 67-74). She further alleges that she voiced concerns regarding her authority, treatment by supervisors, restrictions on DEI programming, and the City's internal handling of employee complaints. (*Id.* ¶¶ 46-53, 67-74).

These allegations reflect workplace disputes and internal employment matters arising directly from Plaintiff's position as the City's Chief DEI Officer. Indeed, the Amended Complaint expressly alleges that Plaintiff's actions consisted of reporting concerns through internal City channels, escalating matters to City officials, and participating in internal investigations. (*Id.* ¶¶ 71-83). Such conduct is precisely the type of employee speech made pursuant to official responsibilities that falls outside the protection of the First Amendment.

Nor do the allegations establish that Plaintiff was speaking primarily as a citizen on matters of public concern rather than addressing internal personnel and workplace issues. The Amended Complaint repeatedly characterizes the speech as involving Plaintiff's objections to workplace decisions, supervisory directives, alleged discrimination, harassment, retaliation, and the handling of employee complaints within City government. (Am. Compl. ¶¶ 46-55, 67-74). Because the speech alleged in the Amended Complaint consists of internal employment-related complaints and communications undertaken in the course of Plaintiff's City employment, Plaintiff has failed to plausibly allege that she engaged in constitutionally protected First Amendment activity. Even accepting those allegations as true, Plaintiff was speaking precisely because she held the position of Chief DEI Officer. Under *Garcetti*, speech undertaken pursuant to one's official responsibilities is not protected First Amendment activity.

The Amended Complaint's own allegations confirm this conclusion. Plaintiff's claimed speech falls into several categories, each of which arose directly from her responsibilities as Chief DEI Officer. First, Plaintiff alleges that she advocated for DEI initiatives, challenged decisions affecting DEI programs, and expressed concerns regarding the Administration's handling of diversity and inclusion issues. (Am. Compl. ¶¶ 46-49, 67-70). Second, Plaintiff alleges that she raised and addressed complaints of race discrimination, sex discrimination, and other workplace-equity concerns involving City employees. (*Id.*, ¶¶ 50-55, 71-74). Third, she alleges that she reported harassment, retaliation, employee misconduct, and related workplace issues. (*Id.*, ¶¶ 50-55, 71-83). Finally, Plaintiff alleges that she raised concerns regarding the photograph incident and advocated for a particular response to that workplace matter. (*Id.*, ¶¶ 56-64, 80-83). Although the Amended Complaint attempts to characterize these communications as protected speech, the common thread is that Plaintiff spoke because of the duties she was hired to perform, not as a private citizen. Without protected speech, Plaintiff cannot satisfy the first element of a First Amendment retaliation claim, and the claim should be dismissed.

**ii. Plaintiff's First Amendment Retaliation Claim Also Must be Dismissed Because It Fails to Allege that Inspector General DeSantis or Director Grace Engaged in First Amendment Retaliation**

As much as Plaintiff predicates Count III on communications by government officials to a private broadcaster, the relevant inquiry is whether those communications constituted threats, coercion, or intimidation suggesting that punishment, sanctions, or adverse regulatory action would follow and, viewed in context, could reasonably be understood as threatening adverse governmental action to punish or suppress Plaintiff's speech. *Mirabella*, 853 F.3d at 651; *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).

The Amended Complaint adds an allegation that iHeartMedia executive Derrick Corbett told Frankie Darcell that she would be personally liable for a defamation claim brought by the Mayor if Plaintiff identified individuals during the interview. (Am. Compl. ¶ 135). That allegation does not identify a threatened prosecution, regulatory penalty, municipal contracting consequence, or other governmental sanction. Nor does the Amended Complaint identify which Defendant communicated that particular warning, the words used by that Defendant, or facts explaining how the warning invoked governmental authority rather than a contemplated personal legal remedy. Those distinctions matter under *Vullo*, which requires consideration of whether the alleged conduct, viewed in context, could reasonably convey a threat of adverse government action intended to punish or suppress speech. 602 U.S. at 177. The deficiency is that Plaintiff's newly specified consequence—a defamation claim brought by the Mayor—does not itself establish the use of governmental power. (*See* Am. Compl., ¶ 135). The remaining reference to unspecified "other adverse consequences" supplies a characterization, not facts identifying what governmental consequence was threatened or by whom. (Am. Compl., ¶ 133).

Plaintiff's separate reliance on Defendants' public criticism likewise requires an independent showing of actionable retaliation. Count III groups public disparagement together with the alleged broadcaster contacts, but disagreement with Plaintiff's account is not, by itself, a constitutional deprivation. (Am. Compl., ¶¶ 153-161). Where an official's alleged retaliation consists of speech, critical or even allegedly defamatory statements do not, without more, establish actionable retaliation absent the requisite threat, coercion, or intimidation intimating punishment, sanction, or adverse governmental action will follow. *McLaughlin v. Watson*, 271 F.3d 566 (3d Cir. 2001). Consistent with that distinction, *Vullo* recognizes that officials may forcefully criticize views with which they disagree, although they may not wield governmental power to suppress

them. 602 U.S. at 188. The quoted public statements attributed to Director Grace and Inspector General DeSantis dispute Plaintiff's account and defend the termination decision; they do not themselves identify a sanction that would follow if Plaintiff continued speaking. Although those statements may inform the context of the broadcaster allegations, their allegedly disparaging character does not establish First Amendment retaliation.

In the alternative, Inspector General DeSantis and Director Grace are entitled to qualified immunity. Qualified immunity shields officials performing discretionary functions from damage unless their conduct violated a clearly established constitutional right of which a reasonable official would have known. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 191 (3d Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court asks whether the pleaded facts establish a constitutional violation and, if so, whether the asserted right was clearly established in the particular circumstances. *Hopkins v. Vaughn*, No. 08-2727, 2010 WL 325886, at *4 (3d Cir. Jan. 29, 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

**iii. Count III Also Should be Dismissed Because Plaintiff Fails to Plead Mayor Parker's Personal Involvement in Any Alleged Retaliation**

Count III independently fails as to Mayor Parker because the Amended Complaint does not plausibly allege her personal involvement in the conduct underlying the claim. Section 1983 liability may not be imposed based solely upon supervisory status. Reiterating the discussion above, a plaintiff must allege personal participation, direction, or actual knowledge and acquiescence in the constitutional violation. *King*, No. 24-6628, at * 10 (dismissing §1983 employment claims against a mayor and borough manager where their supervisory positions were not accompanied by facts connecting them personally to the challenged conduct); *Rode*, 845 F.2d at 1207-08. The Amended Complaint contains no factual allegation that Mayor Parker

communicated with iHeartMedia, directed any communication to iHeartMedia, approved any allegedly coercive communication, or otherwise participated in the conduct establishing Count III.

To the contrary, the Amended Complaint attributes the relevant contacts with iHeartMedia exclusively to Director Grace and Inspector General DeSantis. (*Id.*, ¶ 132). And as discussed above, these allegations are woefully insufficient to state a claim under the First Amendment. Although Plaintiff later groups Defendants together in conclusory fashion, she identifies no specific allegedly retaliatory act Mayor Parker undertook. The allegation concerning Sandra Carter's August 6, 2025 message does not fill that gap. (*Id.*, ¶ 136). The statement that Mayor Parker "absolutely knows what's going on" does not identify what Parker knew, whether that knowledge included any broadcaster contact or threatened litigation, or whether she approved the allegedly coercive means. *Id.* The chronology further limits the inference Plaintiff seeks to draw: Carter's message predates the August 16, 2025 Grace email alleged to "memorialize" the broadcaster effort. (*Id.*, ¶ 134). Although that later email could memorialize earlier conduct, the Amended Complaint does not connect Carter's August 6 statement to an already-existing plan or communication involving iHeartMedia. Knowledge of an ongoing public controversy is not equivalent to personal direction of, or knowing acquiescence in, unconstitutional suppression. Under the personal-involvement standard discussed above, the pleaded message does not sufficiently connect Mayor Parker to any allegedly coercive conduct underlying Count III.

**iv. The First Amendment Claim Against the City Should Be Dismissed Because the Amended Complaint Does Not Properly Allege Municipal Liability**

Defendants incorporate the arguments set forth in Section IV(c)(i)–(iii). Because the Amended Complaint fails to plausibly allege a First Amendment violation by any individual Defendant, municipal liability cannot attach. A municipality may be liable under 42 U.S.C. § 1983

only where a plaintiff plausibly alleges that a constitutional injury was caused by an official municipal policy, custom, or decision of a final policymaker. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692-94 (1978); *McTernan*, 564 F.3d at 658. When no constitutional violation is adequately pleaded, however, municipal liability necessarily fails. *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013); *Williams v. Borough of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989).

Here, Count III fails because the Amended Complaint does not allege that any City policy, custom, or decision of a final policymaker caused any purported injury. *Monell*, 436 U.S. at 692-94. A plaintiff seeking to impose municipal liability must identify the challenged policy, attribute it to the municipality itself, and establish a causal link between the policy and the alleged constitutional deprivation. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Conclusory assertions that governmental conduct reflected an official policy or custom are insufficient. *McTernan*, 564 F.3d at 658.

The Amended Complaint merely recites that the challenged conduct reflected the City's "official policy, custom, and practice" and was undertaken or ratified by final policymakers. (Am. Compl. ¶¶ 25, 147, 160). It identifies no City policy governing communications with private media organizations, alleges no prior comparable incidents, and pleads no facts establishing a widespread or settled municipal practice. Nor does Plaintiff allege facts showing that Mayor Parker directed the challenged communications, approved any specific allegedly coercive statement, or adopted the alleged conduct and its purported unconstitutional basis. At most, Plaintiff alleges that Mayor Parker was generally aware of an ongoing dispute. (*Id.*, ¶ 136). As explained in Section IV(c)(iii), Carter's August 6 message neither identifies the alleged broadcaster pressure nor states that Parker approved its means or allegedly unconstitutional purpose. Plaintiff's characterization of that

message as "ratification" adds a legal conclusion, not the factual connection necessary to attribute the particular challenged conduct to a final policymaker. *Id.* Such allegations are insufficient to establish municipal liability under *Monell*.

Nor does Plaintiff plausibly allege municipal liability through ratification. The Amended Complaint asserts that the challenged conduct was undertaken or ratified by final policymakers, but it alleges only that senior officials were aware of events involving Plaintiff and participated in employment-related decisions. (Am. Compl. ¶¶ 23, 69, 71, 117). Such allegations are insufficient to establish ratification because knowledge of alleged misconduct, receipt of complaints, or involvement in personnel decisions does not plausibly demonstrate that a final policymaker affirmatively approved the allegedly unconstitutional basis for the challenged actions. *See McTernan*, 564 F.3d at 658-59 (rejecting conclusory allegations of municipal policy or custom); *Santiago v. Warminster Twp.*, 629 F.3d 121, 131-132 (3d Cir. 2010) (allegations that supervisor was in charge of an operation and may have been present did not plausibly establish knowledge of and acquiescence in alleged misconduct). Plaintiff therefore fails to plead facts supporting a plausible inference that any final policymaker adopted or ratified an unconstitutional policy, custom, or practice attributable to the City. Accordingly, Count III should be dismissed as against the City.

**d. Defendants are Entitled to Dismissal of Plaintiff's Defamation Claim, with Prejudice (Count IV)**

To state a defamation claim, Plaintiff must plead: (1) the challenged statements were defamatory and readers would understand them as such; (2) Defendants published the statements; (3) the statements were about her and readers would understand as much; (4) the statements harmed her; and (5) Defendants lacked a conditional privilege to make the statements. 42 Pa.C.S.

§ 8343. Plaintiff must also plead that the challenged statements are false. *Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 191 (Pa. Super. 2003).

Because defamation claims pose a risk to free speech, they are regularly dismissed at the earliest possible opportunity, including often before discovery. *See, e.g.*, *Lee v. TMZ Prods. Inc.,* 710 F. App'x 551, 553 (3d Cir. 2017) (affirming dismissal where challenged statements were protected by fair report privilege and where plaintiff failed to adequately allege actual malice); *Pace v. Baker-White*, 432 F. Supp. 3d 495, 512 (E.D. Pa. 2020) (granting dismissal where statements at issue were not capable of defamatory meaning and plaintiff failed to plead actual malice); *Balletta v. Spadoni*, 47 A.3d 183 (Pa. Commw. Ct. 2012) (affirming grant of demurrer where challenged statements were non-actionable opinions); *Jones v. City of Phila.*, 893 A.2d 837, 844 (Pa. Commw. Ct. 2006) (affirming grant of demurrer when challenged statements not defamatory but opinions "about the character of other people."). Such early dismissals help "avoidance of long and expensive litigation productive of nothing" and "curbing the danger that the threat of such litigation will be used to harass or to coerce a settlement." *First Lehigh Bank v. Cowen*, 700 A.2d 498, 502 (Pa. Super. 1997). This role is "even more essential" in First Amendment cases, "[f]or the stake ... if harassment succeeds, is free debate." *Id.*

Plaintiff's defamation claim against Mayor Parker, Inspector General DeSantis, and Director Grace fails because they are protected by absolute high-public-official immunity, and the challenged statements are, in any event, non-actionable opinions or otherwise privileged. Accordingly, as set forth below, Count IV of Plaintiff's Amended Complaint should be dismissed with prejudice.

#### i. Plaintiff's Claim for Defamation Against Mayor Parker, Inspector General DeSantis, and Director Grace Must Be Dismissed Based upon the Doctrine of Absolute "High Public Official" Immunity.

At the outset, Plaintiff's attempt to plead around absolute high public official immunity fails because it rests on legal conclusions that are inconsistent with the Amended Complaint's own factual assertions. Throughout the pleading, Plaintiff alleges that Mayor Parker, Inspector General DeSantis, and Director Grace were acting in their official capacities as City officials and that the challenged communications concerned Plaintiff's employment, the Inspector General investigation, workplace complaints, personnel decisions, and matters of City administration. (Am. Compl. ¶¶ 17-18, 176-181). Yet, when asserting her defamation claim, she attempts to recast their purported conduct as outside the "scope of their authority" and "scope of their employment." (*Id.*, ¶¶ 17-18). The Court need not accept that conclusory characterization. *See Santiago*, 629 F.3d at 131 (explaining that courts may disregard legal conclusions and conclusory assertions unsupported by factual allegations). Indeed, permitting Plaintiff to avoid high public official immunity based solely on her characterization of the challenged conduct would allow a plaintiff to defeat absolute immunity through artful pleading alone.

Count IV of the Amended Complaint should be dismissed against Mayor Parker, Inspector General DeSantis, and Director Grace because the Pennsylvania doctrine of absolute immunity bars defamation claims against them. Pennsylvania courts have routinely held that high public officials are exempted by the doctrine of absolute immunity from all civil suits and damages arising out of false, defamatory statements, and even from statements motivated by malice, when the statements are made in the course of the official's duties. *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996). The absolute immunity afforded to high public officials is broadly construed for, as the Pennsylvania Supreme Court has recognized, the public interest is best served by granting broad

immunity to promote "unfettered discharge of public business and full public knowledge of the facts and conduct of such business." *Greene v. Street*, No. 0303, 2011 WL 10525400, at *3 (Pa. Com. Pl. Aug. 4, 2011) (citing *Montgomery v. City of Phila.*, 140 A.2d 100, 103 (Pa. 1958)) (internal quotations omitted). As such, so long as the statements made by the high public official are related to his or her scope of authority, Pennsylvania courts have granted such official immunity from a defamation suit. *See Factor v. Goode*, 612 A.2d 591, 592–95 (Pa. Commw. Ct. 1992) (affirming dismissal of defamation claim against Mayor and Revenue Commissioner based on statements at a press conference); *McKibben v. Schmotzer*, 700 A.2d 484, 491 (Pa. Super. Ct. 1997) (applying immunity to a mayor's press-release statements closely related to her official duties).

To determine who qualifies as a "high public official," the Pennsylvania Supreme Court has stated that the "determination of whether a particular public officer is protected by absolute privilege should depend on the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Lindner*, 677 A.2d at 1198; *see also Fischer v. Kassab*, 360 A.2d 809, 811 (Pa. Commw. Ct. 1976) ("[Individuals] will be held to be high public officials if sovereign functions of government are delegated to them to be exercised for the public benefit."). Pennsylvania courts have recognized mayors as high public officials entitled to absolute immunity for statements within the scope of their official duties. *Factor,* 612 A.2d at 592-95; *McKibben*, 700 A.2d at 491.

According to the Amended Complaint, the challenged statement was made in a July 30, 2025 news article after Plaintiff publicly asserted that the Administration did not value diversity, equity, and inclusion. (Am. Compl., ¶ 170). In response, Mayor Parker allegedly stated: "I don't think any credible individual can seriously doubt our ironclad commitment to diversity, equity,

and inclusion." *Id.* Plaintiff's own allegations place Mayor Parker's statement within the scope of her official duties. The Amended Complaint alleges that she spoke in direct response to criticism of the Administration's stand on diversity, equity, and inclusion, and in the context of public discussion commenced by Plaintiff regarding Plaintiff's separation from City employment. (Am. Compl., ¶ 171). In addressing that criticism, Mayor Parker was performing her official function of communicating and defending the Administration's decisions on matters of public concern. (Am. Compl., ¶¶ 170-71). Whether Plaintiff contends that listeners interpreted the statement as questioning her credibility is immaterial to the immunity analysis; the relevant inquiry is whether Mayor Parker made the statement within the scope of her official duties. Accordingly, Mayor Parker is immune from liability for defamation arising from the July 30, 2025 statement attributed to her in the Amended Complaint.

Moreover, both Inspector General DeSantis and Director Grace are high public officials for purposes of Pennsylvania's absolute privilege doctrine. Plaintiff alleges that Director Grace, the Mayor's Director of Communications, spoke "on behalf of the Parker Administration," in purportedly stating that the Administration "vehemently disagree[s] with many of [Plaintiff's] allegations and outright misstatements of fact." (Am. Compl., ¶¶ 112, 163). By communicating the Administration's position in response to Plaintiff's public accusations, Director Grace was carrying out his delegated governmental responsibilities as its authorized spokesperson, not speaking as a private citizen.

Similarly, as Inspector General, DeSantis occupies a senior executive position charged with, among other things, investigating misconduct, safeguarding the integrity of the City's operations, and making determinations and recommendations concerning matters affecting municipal governance. The statements attributed to Inspector General DeSantis arose directly from

his job responsibilities. Plaintiff alleges that Inspector General DeSantis publicly addressed whether Plaintiff had reported misconduct, whether her actions violated City policy, whether she acted professionally in handling the underlying incident, and whether the City's decision to terminate her was justified. Inspector General DeSantis allegedly explained that Plaintiff had "failed to properly contain the situation," acted "highly unprofessionally," committed "violations" of the City's sexual-harassment policy, and had disseminated a photograph in a disparaging manner, while seeking to "clarify some of the false information that she's put out there." (Am. Compl., ¶¶ 119-121). By Plaintiff's own allegations, these statements concerned the findings, conclusions, and implications of an Inspector General investigation and were made in response to Plaintiff's public characterization of the events at issue. Communicating the basis for investigative conclusions and responding to public criticism regarding an official investigation fall squarely within the functions delegated to the Inspector General for the benefit of the public. Accordingly, Inspector General DeSantis's statements were made within the scope of his official duties and are protected by absolute immunity.

Plaintiff's newly added assertion that disseminating false accusations was outside Defendants' official duties does not cure. (Am. Compl., ¶ 176). The analysis turns on the relationship between the communication and the official's duties, not on whether the official was authorized to make a false statement. Otherwise, an allegation of falsity or malice would itself defeat the very privilege that protects qualifying official communications made in the course of their official duties and within the scope of their authority. *Lindner*, 677 A.2d at 1195–96. Here, the pleaded communications addressed the Administration's policies, its response to Plaintiff's public accusations, and the findings and consequences of an Inspector General investigation. (Am.

Compl., ¶¶ 67-70, 80-84, 110-122). Plaintiff's characterization of those communications as knowingly false does not transform them into private conduct unrelated to municipal business.

Nor does Plaintiff's reference to a City policy that it "does not comment on personnel matters" establish that these particular communications fell outside Defendants' official responsibilities. (*Id.*, ¶ 177). The Amended Complaint does not identify the policy's text, source, scope, or application to statements responding to public criticism of Administration policy or explaining an official investigation. A generalized assertion of a no-comment practice does not, without more, establish that the challenged statements were private acts rather than communications closely related to the governmental functions described above.

Moreover, Plaintiff cannot circumvent that immunity by alleging that the statement was "knowingly false" or "published to others with actual malice." (Am. Compl., ¶¶ 129, 175). The doctrine permits high-ranking officials, like Inspector General DeSantis, Director Grace, and Mayor Parker, to speak and act on matters within the scope of their official duties without fear of personal liability. *See Lindner*, 677 A.2d at 1195–96 (finding mayor's remarks were made within the scope of his authority immunizing him from slander and libel suit under doctrine of absolute privilege); *see also Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Commw. Ct. 2005) (affirming dismissal with prejudice based on high-public-official immunity notwithstanding allegations of wrongful and improperly motivated conduct). Because Plaintiff's own allegations establish that the statements were made by Inspector General DeSantis, Director Grace, and Mayor Parker in response to her own criticisms of the Administration, the defamation claim is barred regardless of Plaintiff's conclusory assertions concerning malice or falsity.

The Amended Complaint's additional conclusory allegations of actual malice and willful misconduct do not alter that result. (Am. Compl., ¶¶ 178, 181). Plaintiff conflates the statutory

immunity afforded ordinary municipal employees with the distinct common-law absolute privilege afforded high public officials. In *Lindner*, the Pennsylvania Supreme Court expressly rejected the contention that Section 8550 of the Political Subdivision Tort Claims Act abrogates high-public-official immunity for willful misconduct. 677 A.2d at 1196. Accordingly, alleging that Defendants knowingly made false statements or intended to injure Plaintiff's reputation does not overcome this common-law immunity where the speaker qualifies as a high public official and the challenged communication falls within the course and scope of that official's duties.

**ii. The Conditional Privilege Applicable to the Challenged Statements Requires Dismissal of Plaintiff's Defamation Claim.**

Even if the Court were to conclude that absolute immunity does not apply, Plaintiff's defamation claim independently fails because the challenged statements were made on a privileged occasion. Pennsylvania recognizes a conditional privilege where a speaker has a legitimate interest or duty in communicating information and the recipient has a corresponding interest in receiving it. *Miketic v. Baron*, 675 A.2d 324 (Pa. Super. Ct. 1996) (affirming judgment on the pleadings in a defamation action where communications concerning physician's performance were conditionally privileged among his colleagues who shared an interest in the employment decision). Public statements regarding governmental operations and personnel decisions fall squarely within that privilege. As alleged, the challenged statements were made in response to Plaintiff's public allegations concerning the City's handling of workplace issues and her termination. (Am. Compl. ¶¶ 110-122, 170-171). The Amended Complaint contains only conclusory allegations of malice and does not plead facts sufficient to overcome the privilege. Accordingly, Count IV also should be dismissed on that basis.

**iii. Alternatively, The Challenged Statements Cannot Support a Defamation Claim Because They Constitute Non-Actionable Opinion and Are Not Capable of Defamatory Meaning.**

1. Inspector General DeSantis's Statements Are Not Verifiable Assertions of Fact and Therefore Cannot Support a Defamation Claim.

The defamation claim against Inspector General DeSantis independently fails because the challenged statements are expressions of opinion, evaluative judgments, and characterizations of disputed conduct, rather than objectively verifiable assertions of fact. Under Pennsylvania law, only statements capable of being proven true or false are actionable. *Alston v. PW-Phila. Weekly*, 980 A.2d 215, 220-222 (Commw. Ct. 2009), relying on *Braig v. Field Communications*, 456 A.2d 1366, 1372-73 (Pa. Super. Ct. 1983); Restatement (Second) of Torts § 566. Expressions of opinion, criticism, and subjective assessments of an individual's conduct are not actionable merely because they are unfavorable. *See Veno v. Meredith*, 515 A.2d 571, 575–76 (Pa. Super. Ct. 1986) (affirming dismissal of defamation claims arising from editorials criticizing journalists' research, fairness, and professional judgment because the criticism was "expression of opinion based on disclosed … facts", rather than "imply[ing] additional, undisclosed defamatory facts").

Here, Plaintiff challenges Inspector General DeSantis's statements criticizing her handling of the underlying incident, characterizing her conduct as "unprofessional[]," and defending the Administration's decision to terminate her employment. (Am. Compl., ¶¶ 165-168). Whether an employee acted "unprofessionally" or otherwise "did something wrong" necessarily depends on the speaker's evaluation of the employee's actions and the standards against which that conduct is judged. (Am. Compl., ¶¶ 113-15, 165). Likewise, the Amended Complaint alleges that Inspector General DeSantis stated the Administration "did the right thing" in terminating Plaintiff. (Am. Compl., ¶¶ 118, 165). Viewed in context, that statement does not assert any concrete fact about

Plaintiff. Instead, it conveys Inspector General DeSantis's subjective assessment that the City's employment decision was justified. It is not susceptible to Plaintiff's objective verification because it merely reflects a value judgment regarding the propriety of a personnel decision. Similar to *Veno*, the challenged statements by Inspector General DeSantis do not support a defamation claim because his comments concerning Plaintiff's "unprofessional[ism]" made during the broadcast are merely his opinion and criticism of her actions, and do not prove or disprove any fact about Plaintiff. (Am. Compl., ¶¶ 165-168). Because the challenged statement cannot be proven true or false, it is not actionable.

2. Plaintiff's Defamation Claim Must be Dismissed Because the Challenged Statements Were Substantially True.

Count IV also independently fails because Plaintiff does not plausibly allege the falsity of the challenged statements. Under Pennsylvania law, truth is a complete and absolute defense to defamation. *Pelagatti v. Cohen*, 536 A.2d 1337, 1345–46 (Pa. Super. Ct. 1987). A statement need not be literally accurate in every respect; substantial truth is sufficient when any inaccuracies do not materially alter the substance, gist, or effect of the statement on its audience. *ToDay's Hous. v. Times Shamrock Commc'ns, Inc.*, 21 A.3d 1209, 1215 (Pa. Super. Ct. 2011); *Rubin v. CBS Broad. Inc.*, 170 A.3d 560, 565 (Pa. Super. Ct. 2017).

Here, Plaintiff's own allegations acknowledge that she became involved in the photograph incident, discussed the photograph with others, and participated in the events that became the subject of an investigation by Inspector General DeSantis. (Am. Compl., ¶¶ 75-83). Plaintiff continues to allege that she was terminated shortly thereafter and that Defendants publicly explained the termination decision by reference to that incident and the resulting investigation. (*Id.*, ¶¶ 84-88, 114-122). Thus, even accepting Plaintiff's disagreement with Inspector General DeSantis's characterization of her conduct, Plaintiff's allegations confirm the essential underlying

facts upon which those characterizations were based. Whether Plaintiff "mishandled" the situation, exercised "poor judgment," or acted "unprofessionally" reflects Inspector General DeSantis's assessment of conduct that Plaintiff concedes occurred. (*Id.*, ¶ 115). Because Plaintiff fails to plausibly allege that the underlying factual basis for those statements was materially false, Count IV should be dismissed with prejudice as to Inspector General DeSantis.

#### 3. Director Grace's Generalized Disagreement with Plaintiff's Account Does Not Support a Claim for Defamation.

With respect to Plaintiff's defamation claim against Director Grace, Pennsylvania law protects opinions and interpretations concerning disclosed statements unless they reasonably imply undisclosed defamatory facts. *McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 357–59 (3d Cir. 2020); *see also Manco v. St. Joseph's University*, Civ. A. No. 22-285, 2024 WL 299265, at * 9 (E.D. Pa. Jan. 25, 2024). In the Amended Complaint, Plaintiff alleges that Director Grace stated, "We vehemently disagree with many of the former employee's allegations and outright misstatements of fact." (Am. Compl. ¶¶ 112, 163). Read in context, this generalized statement does not plausibly support a defamation claim.

Similarly, Director Grace does not identify any statement made by Plaintiff that was allegedly false, nor did he accuse Plaintiff of knowingly lying. Plaintiff's characterization of a statement cannot substitute for the meaning reasonably conveyed by the words themselves. Because the statement communicates only the administration's disagreement with Plaintiff's public account, not an identifiable accusation of undisclosed wrongdoing, Count IV also should be dismissed as to Director Grace.

4. Mayor Parker's Statement Is Not "Of and Concerning" Plaintiff and Therefore Cannot Give Rise to Defamation Liability.

As described herein, Plaintiff alleges that, in response to criticism regarding the City's commitment to diversity, equity, and inclusion, Mayor Parker stated: "I don't think any credible individual can seriously doubt our ironclad commitment to diversity, equity, and inclusion." (Am. Compl., ¶¶ 124, 170). Even apart from Mayor Parker's absolute immunity, the alleged statement is not actionable because it addresses the Administration's generalized policy commitments, not Plaintiff. *Id*. On its face, the statement neither mentions Plaintiff nor accuses her of misconduct, discrimination, dishonesty, policy violations, or any other verifiable wrongdoing. At most, the alleged statement expresses Mayor Parker's view regarding the Administration's values and describes the Administration's commitment to DEI as "ironclad." *Id*.

Despite this, Plaintiff alleges that, because Mayor Parker's statement was made in direct response to Plaintiff's public assertion that the Administration did not value diversity, equity, and inclusion, readers would have understood Mayor Parker to be labeling Plaintiff as "not credible" and as having made false public statements. (Am. Compl., ¶¶ 126, 171). Even accepting these allegations as true, the challenged statement remains a defense of the Administration's policies and values, not an assertion of fact concerning Plaintiff. The Amended Complaint does not allege that Mayor Parker accused Plaintiff of lying, or identify any specific statement Plaintiff made as false, nor could it. A reasonable listener would understand that Mayor Parker's statement was merely political advocacy and disagreement with Plaintiff's criticism of the Administration and is not a verifiable factual accusation about Plaintiff herself. Plaintiff cannot transform the Administration's rebuttal of her criticisms into actionable defamation by merely alleging that the Administration's rebuttal purportedly challenged her credibility. *See McCafferty*, 955 F.3d at 355(affirming dismissal of complaint against news group because "no reasonable reader" would

think the article contained defamatory statements). Accordingly, because the challenged statement is neither "of and concerning" Plaintiff nor reasonably capable of a defamatory meaning, the defamation claim against Mayor Parker should be dismissed on this independent basis.

**e. Plaintiff's Demand for Punitive Damages Should Be Stricken.**[2]

Plaintiff's demand for punitive damages against the individual Defendants in their official capacities should be dismissed. An official-capacity claim is not a claim against the employee personally; it is "another way of pleading an action against an entity of which [the government] is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Pennsylvania law likewise treats claims against municipal employees in their official capacities as claims against the municipality itself. *See Lakits v. York*, 258 F. Supp. 2d 405 (E.D. Pa. 2003). Because punitive damages are unavailable against a municipality under Section 1983, Plaintiff cannot obtain them by naming City officials in their official capacities. *Feingold,* 517 A.2d at 1276-77. The punitive damages demand should be dismissed.

**f. Dismissal Should Be With Prejudice Because Further Amendment Would Be Futile**

Plaintiff has already had an opportunity to amend her pleading after reviewing Defendants' original Motion to Dismiss, which identified the deficiencies in each of her claims. Rather than curing those defects, the Amended Complaint expands the factual allegations while leaving the core deficiencies intact. Plaintiff still fails to plausibly allege that the challenged employment actions were motivated by race or sex, fails to identify a similarly situated comparator, fails to plead race-based protected activity sufficient to support her claims under 42 U.S.C. §§ 1981 and

[2] If Plaintiff seeks punitive damages against the City, her claim fails because municipalities are immune from punitive damages under Pennsylvania law. *Feingold v. Southeastern Pennsylvania Transp. Auth.,* 517 A.2d 1270, 1276-77 (Pa. 1986).

1983, fails to allege municipal liability based on a policy, custom, practice, or policymaker decision, and fails to establish personal involvement by certain individual defendants in the alleged constitutional violations. Plaintiff likewise has not cured the deficiencies in her First Amendment claim, which continues to rest on conclusory allegations of coercion and retaliation unsupported by facts demonstrating actionable conduct. Moreover, Plaintiff has failed to overcome the immunity or other legal barriers to her defamation claims.

The Court need not permit endless attempts to replead claims that remain legally deficient. *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that amendment need not be permitted when it would be inequitable or futile). The Amended Complaint continues to rely on the same fundamental theories rejected by settled law, supplemented largely with additional conclusions and characterizations rather than facts sufficient to state a claim. Under these circumstances, the remaining deficiencies are not the result of inartful pleading but reflect the absence of facts capable of supporting Plaintiff's theories of liability.

Moreover, several of the defects identified herein are legal, rather than factual, in nature. Plaintiff cannot transform routine workplace disputes and disagreements regarding management decisions into actionable discrimination, convert communications made by high-ranking public officials acting within the scope of their official duties into actionable defamation, or establish municipal liability through conclusory references to policies, customs, practices, or ratification. Because Plaintiff has already amended once and still failed to cure these deficiencies, further amendment would be futile. Accordingly, the Court should dismiss the challenged claims with prejudice.

## V. CONCLUSION AND REQUESTED RELIEF

For any or all of the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's Amended Complaint, dismiss Counts I, II, III, and IV in their entirety, with prejudice, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Danielle Banks*
Danielle Banks
Stephanie W. Fenster
STRADLEY RONON STEVENS & YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103-7098
(215) 564-8000

Dated: November 23, 2026

*Counsel for Defendants, City of Philadelphia, Alex DeSantis, Cherelle Parker, Vanessa Garrett-Harley, and Joseph Grace*

**CERTIFICATE OF SERVICE**

I, Danielle Banks, hereby certify that on November 23, 2026, I caused a true and correct copy of the foregoing Motion to Dismiss with Memorandum of Law, and Proposed Order to be filed with the Court and served using the Court's ECF system and via e-mail to counsel for Plaintiff as follows:

Christopher A. Macey, Jr.
Bell & Bell LLP
One Penn Center
1617 JFK Blvd – Suite 1254
Philadelphia, PA 19103
christophermacey@bellandbelllaw.com
*Attorneys for Plaintiff*

*/s/ Danielle Banks*
Danielle Banks